Kelly v. Thuey.

## KELLY v. THUEY et al., Appellants.

DIVISION ONE.

**Specific Performance:** AGENT: PARTIES: Where an agent makes an express contract in writing in his own name to buy land and to give a deed of trust thereon to secure unpaid purchase money, he alone can sue to compel specific performance of the contract, though the vendor knew the agent was acting for an unnamed principal.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*Chase & Powell* and *Karnes, Holmes & Krauthoff* for appellants.

(1) Plaintiff is here seeking aid of a court of equity to compel specific performance of a contract and must come with clean hands. When an agreement is tainted with fraud, misrepresentations, or obtained by unfair means, equity will not lend its aid to its enforcement. Pomeroy on Spec. Perf., sec. 175, pp. 243, 244. (2) The writing did not contain the real agreement, there being omitted from it that the vendee should pay for abstract, taxes for 1887 and 1888. If contract was signed on representation of party procuring it, that it contained whole contract, then it cannot be enforced. *Rothschild v. Frendorf*, 21 Mo. App. 323. It was admitted by James Kelly that he was to pay for abstract, but this was omitted from contract. A written contract will not be enforced if there has been fraud or mistake in writing the agreement. *Fruin v. Railroad*, 89 Mo. 405; *Ramsbottom v. Gosden*, 1 Veasey & Beam's Rep.

167, 168. (3) The contract being made and executed by D. T. Kelly is the contract of D. T. Kelly, and can only be enforced by him. *Fowler v. Shearer,* 7 Mass. 19; *Spencer v. Field,* 10 Wend. 87; *Seyfert v. Bean,* 83 Penn. St. 484; *Newcombe v. Clark,* 1 Denio, 226. A memorandum which is so incomplete that it is necessary to supply by parol the amount of balance of purchase money is not sufficient to satisfy the statute of frauds. *Schroeder v. Taaffe,* 11 Mo. App. 267; *Coles v. Brown,* 10 Paige, 538; *Scarritt v. Church,* 7 Mo. App. 174. (4) The contract is made in the name of D. T. Kelly, and parol testimony is necessary to establish the interest of plaintiff, and is therefore insufficient under the statute of frauds, as the terms of the instrument cannot be changed or added to. *Wing v. Glick,* 56 Iowa, 473; *Schroeder v. Taaffe,* 11 Mo. App. 267; *Coles v. Brown,* 10 Paige, 538. (5) D. T. Kelly, while acting as agent of defendant Thuey was, without Thuey's knowledge, acting as agent for plaintiff, and contract made by him is void as to defendant Thuey. *Leekins v. Nordyke & Marmon Co.,* 66 Iowa, 474. (6) The bill asks that the deed to Bush be set aside, and that defendant Thuey be ordered to execute a deed to plaintiff. The decree is that Bush shall execute to plaintiff a warranty deed. The decree is not responsive to plaintiff's pleadings, and is erroneous in that it requires Bush to make a warranty deed to plaintiff to the land, when in no event could he be required to execute other than such a conveyance as would pass all title Bush derived from Thuey. *Cromie v. Marine,* 12 Mo. App. 569; *Henry v. Liles,* 2 Ired. Eq. (N. C.) 407. (7) In actions for specific performance each case must be determined on its own merits. *Durretts v. Hook,* 8 Mo. 374; *Ivory v. Murphy,* 36 Mo. 534; *Fish v. Lightner,* 44 Mo. 268; *Taylor v. Williams,* 45 Mo. 80; *Burk v. Seely,* 46 Mo. 334; *Paris v. Haley,* 61 Mo. 453. (8) If the terms of the contract are unfair, harsh or oppressive, they will not be enforced. When the evidence

shows that there was not an intelligent consent to the contract by the party against whom performance is sought, or that it was entered into under circumstances of surprise, or want of advice, or that one of the parties was an illiterate person, or in distress, the court will not compel him to perform, and age, poverty, lack of knowledge of business will all be considered. Waterman on Spec. Perf., secs. 158, 159; Pomeroy on Cont., secs. 175, 185; *Stone v. Pratt*, 25 Ill. 25; *Taylor v. Williams*, 45 Mo. 83; *Veth v. Gierth*, 92 Mo. 97, 104. (9) It requires much less strength of case on the part of defendant to resist a bill to perform a contract, than it does on the part of the plaintiff to maintain a bill to enforce a specific performance. 2 Story's Eq. Jur., secs. 769, 770; *Vigers v. Pike*, 8 Cl. & Fin. 562, 645; *Veth v. Gierth*, 92 Mo. 104. (10) The plaintiff cannot set up one cause of action in his petition and on the trial prove another and different one. *Daugherty v. Matthews*, 35 Mo. 520; *Beck v. Ferrara*, 19 Mo. 30; *Waldhier v. Railroad*, 71 Mo. 514; *Clements v. Yeates*, 69 Mo. 623; *Deackman v. McCormick*, 24 Mo. 596.

*Dobson, Douglass & Trimble* for respondents.

(1) As the contract sued on is not under seal, suit is properly prosecuted in the name of plaintiff, notwithstanding the name of D. T. Kelly appears in the written contract, or memorandum, as the purchaser. *Briggs v. Partridge*, 64 N. Y. 357; *Wilson v. Hunter*, 7 Taun. 259, quoted with approval in *Dykins v. Townsend*, 24 N. Y. 57–60; Story on Agency [8 Ed.] secs. 160, 160a, and notes; *Lerned v. Johns*, 9 Allen, 421; *Higgins v. Senior*, 8 Mees. & Wel. 834; *Ford v. Williams*, 24 How. (U. S.) 287; *Briggs v. Munchon*, 56 Mo. 467; *Huntington v. Knox*, 7 Cushing, 371; *Sims v. Bond*, 5 B. & Ad. 393. Under our statutes, in view of the evidence in this case, the suit could not be prosecuted in the name of D. T. Kelly, because he is not the real party in interest. R. S. 1889, sec. 1990. (2) There is nothing in either the

pleadings or evidence to show that the words, "Six hundred and sixty-four dollars," were interlined without the knowledge and consent of all the parties to the contract, and the presumption is that it was altered before signing and delivery. *Holton v. Kemp*, 81 Mo. 661, and cases cited ; *McCormick v. Fitzmorris*, 39 Mo. 24. (3) But the insertion of the amount of the purchase price in such a contract or "memorandum" is not necessary. It may be supplied by parol testimony. *Beans v. Valle*, 2 Mo. 126 ; *Halsa v. Halsa*, 8 Mo. 303 ; *Ivory v. Murphy*, 36 Mo. 534 ; *Whaley v. Hinchman*, 22 Mo. App. 483. (4) There can be no doubt but the paper sued upon, or relied upon as a memorandum, is a sufficient memorandum to satisfy the requirements of the statute of frauds. *Wiley v. Roberts*, 27 Mo. 388 ; *Lash v. Parlin*, 78 Mo. 392 ; *Ellis v. Bray*, 79 Mo. 227 ; *DeSteiger v. Hollington*, 17 Mo. App. 382. (5) The judgment of the trial court is entitled to much weight, and will be deferred to, unless it is clear that the chancellor has disregarded the evidence. *Royle v. Jones*, 78 Mo. 403.; *Snell v. Harrison*, 83 Mo. 652 ; *Springer v. Kleinsorge*, 83 Mo. 152, 159. (6) The fact that D. T. Kelly testifies that he was acting for both parties in making the sale to his brother cannot affect this case. It could only be used to defeat a recovery of commission from both sides for his services. *Scribner v. Collar*, 40 Mich. 375 ; *Bell v. McConnell*, 37 Ohio St. 396. (7) The contract upon its face was between Thuey and D. T. Kelly, and, therefore, Thuey knew that Kelly was not, and did not pretend to be, acting for him alone. Therefore, he cannot be heard to object to carrying out the contract on the ground that Kelly was acting for both parties. *DeSteiger v. Hollington*, 17 Mo. App. 382 ; Story on Agency [8 Ed.] secs. 31, 210 ; *Young v. Hughes*, 32 N. J. Eq. 372, 385 ; *Short v. Millard*, 68 Ill. 292 ; *Fritz v. Finnerty*, 5 Col. ; 10 Cent. Law Jour. 487 ; *Stewart v. Mather*, 32 Wis. 344. (8) The evidence introduced by the defendant to sustain the charge in the answer, that D. T. Kelly obtained

Thuey's signature .to the contract by threats and violence and misrepresentations, does not in any particular sustain the charge as made, nor does it amount to duress of any kind, nor is it of a nature or character to entitle the defendant Thuey to any relief from the terms of the contract. *Buchanan v. Sahlein*, 9 Mo. App. 552 ; *Emmons v. Scudder*, 115 Mass. 372.

BLACK, J.—This is an action for the specific performance of the following contract, which is dated the sixteenth of December, 1885 :

"Received of D. T. Kelly $50, being in part payment of the purchase price of fifty-two feet by fifty off the west end of lot number * * *. I agree to make and deliver a good and sufficient warranty deed conveying said premises to said Kelly free of all incumbrances without delay, and as soon as the abstract of title thereto shall have been examined and approved, at which time said Kelly shall pay to me the sum of $950 in cash and (six hundred and sixty-four dollars) the balance of the purchase price he shall pay in three equal annual installments with eight-per-cent. interest to be secured by deed of trust executed on said property. If I shall fail to convey good title to said premises to said Kelly as aforesaid, then said $50 shall be refunded to him.

" RICHARD × TOOEY,

"BRIDGET × TOOEY,

"D. T. KELLY."

James T. Kelly claiming to be the real purchaser in due time tendered to Thuey the balance of the cash payment and offered to perform the contract by executing his notes and deed of trust for the deferred payments.

Two or three days after the execution of the contract, Thuey sold and conveyed the entire lot to the defendant, Bush, who purchased with full knowledge of the outstanding contract.

1. One defense is that the contract was altered by inserting the words, "six hundred and sixty-four

dollars," after it had been executed ; but the proof does not sustain the averment.   Indeed, it is· very clear that the words were inserted by way of interlineation before the contract was executed.

2.   It is again insisted that D. T. Kelly procured the contract by false representations.   The evidence shows that the lot was incumbered by a paving tax bill for $700 ; that Thuey was an old man, unable to read or write ; that he owned no other property and was obliged to either borrow money on the lot or sell part thereof to pay the tax bill.   The claim is, that Kelly told Thuey that if he made a mortgage ·on the lot he could not sell it, and in this way induced the latter to make the contract.

The evidence shows that Kelly advised Thuey to sell rather than borrow the money, but that is all· it does show     The proof does not sustain the many allegations of fraud, deceit and misrepresentation.  Defendant Bush offered to purchase the lot on terms a little more advantageous to Thuey, and he, his wife and daughter concluded to and did accept the offer.   The evidence leads us to the conclusion that it was this offer made by Bush which induced Thuey to repudiate his contract with Kelly.

3.   The further defense is that defendant Thuey made no contract whatever with the plaintiff, James T. Kelly.   The evidence of D. T. Kelly is, that Thuey asked him to find a purchaser for a part of the lot, and that he mentioned the matter to his brother, James T. Kelly, who concluded to buy the fifty-two feet; and that he, D. T. Kelly, then entered into the contract in question.   The first contract was informal, and James T. Kelly, the plaintiff, had a more formal one prepared, which is the one now in question, and D. T. Kelly signed it and then had it signed by Thuey.   James T. Kelly furnished the $50 paid at the time the contract was executed.   As between the two Kellys, it is clear that the property was purchased for James T.; but he

had the contract made in the name of his brother. The other evidence does not show that Thuey knew James T. Kelly had any interest in the transaction; so far as the evidence goes, it would seem he had no such knowledge. The answer of Thuey, however, states that D. T. Kelly said a man for whom he was acting, but whose name he did not give, would purchase the property, and that by false statements he induced defendant to agree to sell the property to the party for whom Kelly was acting.

We must take this verified answer as an admission that Thuey knew D. T. Kelly was buying the property for an unnamed person. The other evidence shows that he was acting for plaintiff, but this Thuey did not know. The contract was taken in the name of the agent by the directions of the plaintiff, for he had it prepared. Under these circumstances, can the plaintiff compel specific performance?

Where, as here, the contract is not under seal, if it can be gathered from the whole instrument that one party acted as agent, the principal will be bound, or he may sue thereon in his own name. Indeed, if the instrument is so uncertain in its terms as to leave it in doubt whether the principal or agent is to be bound, such uncertainty may be obviated by the production of parol evidence. *Hartzell v. Crumb*, 90 Mo. 630; *Klostermann v. Loos*, 58 Mo. 290. But these principles cannot aid the plaintiff in this case, for there is nothing whatever on the face of this contract to show that D. T. Kelly acted as agent for anyone.

The plaintiff insists that a much more comprehensive doctrine should be applied, and he refers to the often cited case of *Higgins v. Senior*, 8 Mees. & Wel. 843, which was a contract for the sale of goods. The question presented there was, whether the defendant could discharge himself by proving that the agreement, though made in his own name, was really made by him as the agent of a third person, and that this was known

to the plaintiff when the contract was signed. "There is no doubt," says the court, "that, where such an agreement is made, it is competent to show that one or both of the contracting parties were agents for other persons, and acted as such agents in making the contract so as to give the benefit of the contract on the one hand to, and charge with liability on the other, the unnamed principal; and this, whether the agreement be or be not required to be in writing by the statute of frauds."

Such proof, it is said, does not violate the rule of law which says, parol evidence will not be received to vary the terms of a written contract because it only shows that the agreement binds another person by reason of the act of the agent in signing the agreement pursuant to his authority. The doctrine of that case has been quoted with approval by this court on two occasions. *Briggs v. Munchon*, 56 Mo. 467; *Higgins v. Dellinger*, 22 Mo. 397. The following and many other authorities are to the same effect: Story on Agency [9 Ed.] sec. 160a; Whart. on Agents, sec. 403; Fry on Spec. Perf., sec. 148; *Huntington v. Knox*, 7 Cush. 371; *Briggs v. Partridge*, 64 N. Y. 357.

This broad doctrine, that, when an agent makes a contract in his own name only, the known or unknown principal may sue or be sued thereon, may be applied in many cases with safety, and especially in cases of informal commercial contracts. But it is certain that it cannot be applied where exclusive credit is given to the agent, and it is intended by both parties that no resort shall be had by or against the principal (Story on Agency, sec. 160a), nor does it apply to those cases where skill, solvency or any personal quality of one of the parties to the contract is a material ingredient in it. Fry on Spec. Perf., sec. 149.

Now, in this case, the written contract is full, complete and formal. It expresses just what the parties

thereto intended it should express. The plaintiff had it prepared, and must be taken to have directed it to be made in the name of D. T. Kelly and not in his own name. In short, the contract is one between Thuey and D. T. Kelly, and was so intended by all the parties. It contains agreements to be performed by both parties. Thuey agreed to sell the land to D. T. Kelly and agreed to take the latter's notes and deed of trust for the deferred payments. He did not agree to take the notes and deed of trust of the plaintiff for the deferred payments. To admit parol evidence to show that D. T. Kelly acted as an agent of the plaintiff, and then substitute, or add, the plaintiff as a party, is simply to make a new contract for the parties. To say that the admission of such evidence does not alter the written contract, in a case like the one in hand, is a doctrine too subtle and refined to be comprehended. D. T. Kelly contracted for the warranty deed of Thuey, and he is entitled to Thuey's covenant of warranty, and could not be required to take the covenants of some person to whom Thuey should sell the property. *Steiner v. Zwickey*, 43 N. W. Rep. 376.

So, on the other hand, Thuey contracted for, and is entitled to have, the notes and deed of trust of D. T. Kelly, and he cannot be compelled to take the notes of another person. Whatever the rights may be as between the Kellys, the plaintiff is not a party to the contract with Thuey, and he cannot enforce specific performance of it and thereby compel Thuey to accept his obligations for the deferred payments.

The right to enforce specific performance of this contract exists in D. T. Kelly and not the plaintiff. D. T. Kelly must make the note and deed of trust, and to that end the title must be vested in him, and he is, therefore, a necessary and indispensable party to this suit. The judgment is, therefore, reversed and the cause remanded. All concur.