P. P. YOUNG, Respondent, v. JOHN EMMKE, et al., Appellants.

In the Kansas City Court of Appeals, April 3, 1922.

1. EVIDENCE: Principal and Agent: Where Simple Contracts are Involved, Permissible to Show by Parol Evidence Who is the Real Principal. It is always permissible where simple contracts are involved to show by parol evidence who is the real principal.

2. CORPORATIONS: Evidence Held to Show That Contract was Made by One Representing Another in His Capacity as President and General Manager of a Corporation. Evidence *held* to show that contract of employment to superintend the construction of a dam was made by one representing another in his capacity as president and manager of a corporation, the owner of the land upon which the improvement was made.

3. APPEAL AND ERROR: Demurrer: On Appeal from Demurrer Evidence is Taken in Its Most Favorable Light to Plaintiff. On a demurrer to the evidence, the evidence on appeal is taken in its most favorable light to plaintiff.

4. CORPORATIONS: Principal and Agent: Where Plaintiff Made Contract with Agent of Undisclosed Principal, Plaintiff on Breach Thereof by Undisclosed Principal, Held Entitled to Recover. Where plaintiff in entering into a contract believed that he was making the same personally with the president and general manager of a corporation, but as a matter of fact the president and general manager was merely the agent of the corporation, and the corporation was the undisclosed principal, plaintiff had the right to hold the corporation for breach of the contract.

Young v. Emmke.

5. **COUNTERCLAIM: Pleading: Where Corporation Filed a Counter-claim Alleging a Cause of Action Based Upon Contract Claimed by Plaintiff to Have Been Breached by Corporation the Corporation Thereby Adopted the Contract.** In an action for damages for breach of a contract made by plaintiff with another, acting for the president and general manager of a corporation where the corporation in its counter-claim pleaded that it had a contract with plaintiff to superintend the construction of a dam on its land, there being no contract mentioned either in the pleadings or in the evidence, except the contract sued on, the corporation thereby adopted the contract when it filed its counterclaim alleging a cause of action against plaintiff based on the contract.

6. **CONTRACTS: One Suing on Contract Adopts the Whole and Cannot Reject Portions Thereof.** Defendant by suing on the contract adopted the whole and could not reject portions of it.

7. **Instructions: Estoppel: Where Defendant Claimed There Was no Evidence of Adoption of Contract by It, but Requested an Instruction Submitting the Issue of Adoption, it Was Thereby Estopped to Deny that There was no Such Issue in the Case.** In an action for breach of contract where defendant contended there was no evidence of adoption of contract by it, an instruction requested by it submitting the issue of adoption to the jury estopped it to deny that there was such an issue in the case.

8. **Demurrer: Pleading: Where Petition Contained Three Counts, one of Which is Good, Court Required to Overrule a General Demurrer Thereto.** Where plaintiff's petition contained three counts, one of which is good, the trial court was required to overrule a demurrer, which was general in its nature and not leveled at the three counts separately.

Appeal from the Circuit Court of Clay County.—*Hon. Ralph Hughes*, Judge.

AFFIRMED.

*Harris L. Moore* for respondent.

*Craven & Bates* for appellant.

BLAND, J.—This is a suit upon a written contract executed on the 24th day of August, 1918. The contract recites that it was made between the "Elms Lake Resort

Association . . . and P. P. Young'' and was to cover the proposed construction af a large dam on a farm in Ray County, Missouri, near Excelsior Springs, owned by the defendant Elm Tree Inn Company. It provided that the work was to be begun not later than September 10, 1918, and completed as soon as possible. It employed plaintiff to superintend the construction of the dam and provided that for his services he should receive the sum of $50 per week and the further sum of ten per cent of the cost price of the material that entered into the construction except rock to be furnished under a ''rock contract.'' The contract is signed by plaintiff and ''Elms Lake Resort Association (By Geo. W. LaRue, Sect., Treas.).''

The first count of the petition alleges that the defendants under the style and name of Elms Lake Resort Association executed the contract above referred to, the contract being set out in full in this count; that defendant Elms Tree Inn Company was the owner of the land and that defendant John Emmke was president and in charge of the affairs of the company; that said defendants authorized and employed one George LaRue to enter into a contract for them for services in the construction of the improvement on the land and afterwards ratified and confirmed the contract entered into with plaintiff; that plaintiff began the work on the 7th day of September, 1918, and continued to carry it on under the terms of the contract until the 24th day of December, 1918, when defendants ordered the work stopped and refused to allow plaintiff to continue, although plaintiff was able, willing and offered to do so. This count asked damages in the sum of $450 for the failure of defendants to permit plaintiff to complete the work. The second count pleads the contract and the refusal to permit plaintiff to finish the work and that there was due plaintiff under the contract for services actually performed the sum of $1435.98. The third count pleads that plaintiff at the special instance and request of the defendants furnished them with the work of a man and a team of horses on the construction of the dam; that the reasonable value of the services

of the man and team was $18.90 and asked judgment in that amount.

The answer of defendant, Elm Tree Inn Company, admits its incorporation and consists of a general denial and a counterclaim stating that it had been contemplating the construction of a lake on its property and desiring to have an expert capable of superintending its construction, employed plaintiff who represented himself as being an expert in the work contemplated; "that the work was commenced in pursuance of said contract under the superintendency of plaintiff" and that after the dam had been constructed to a certain height it broke and washed away under the pressure of water that had gathered in the lake; that the breaking loose and washing away of the dam was due to the carelessness and negligence of plaintiff in respect to certain matters therein stated, and asked judgment against plaintiff in the sum of $6,000 on account of damages sustained by it by reason of such carelessness and negligence. The answer of defendant Emmke consisted of a general denial and specific denials of the allegations of the petition.

At the close of plaintiff's testimony defendant offered separate demurrers to the evidence. The demurrer offered on behalf of defendant Emmke was given but the court overruled the peremptory instruction offered by the defendant, Elm Tree Inn Company. The defendant company offered no evidence and the case was submitted to the jury, resulting in a verdict in favor of said defendant on the first count and in favor of plaintiff on the second count in the sum of $1120, and on the third count in the sum of $18.60, and a verdict for plaintiff on said defendant's counterclaim. Defendant, Elm Inn Company, appealed.

The main contention of the present defendant is that its demurrer to the evidence should have been sustained because if any one was liable to plaintiff under the contract, it was LaRue and Emmke; that the contract was entered into by plaintiff and the "Elms Lake Resort Association" by LaRue as its secretary and treasurer,

and as there was no such corporation or none thereafter formed, although it is claimed that it was the intention that said association was to be incorporated by Emmke and LaRue as incorporators, and as LaRue executed the contract on behalf of such proposed corporation and not on behalf of this defendant, and as neither he nor plaintiff contemplated, thought or intended that they in entering into a contrcat were binding this defendant, this defendant was not liable.

The facts show that plaintiff began the work shortly after the signing of the contract and that Emmke was the president and active manager of the defendant Elm Tree Inn Company, hereinafter referred to as the Inn Company; that the Inn Company owned a farm in Ray County, Missouri, and contemplated putting in a dam in order to make a lake in which to raise fish and for wild duck. Emmke was leaving for his vacation in Minnesota and left the matter of constructing the dike in the hands of LaRue, telling the latter that he wanted no correspondence about the matter as he was going for a rest; he told LaRue to go ahead with the improvements. Emmke testified that the instruction was ''to go ahead and be done by the day's work;'' that after he left LaRue wrote him that he was not ''getting along very well;'' that he had hired a superintendent. LaRue testified that the contract with plaintiff was his own idea and he sent Emmke a copy of the contract but Emmke testified that he did not receive it. Emmke testified that the Inn Company paid plaintiff at the end of each week as the work progressed; that it settled with plaintiff every week ''as he brought in his time;'' that it paid him for all except the last week; that it refused to pay him the ten per cent. He admitted that there was a balance due of $18.60 for the man and team. LaRue testified—

''Q. In the summer of August, 1918, did you understand them to have that work done for Mr. Emmke or the Elm Tree Inn Company? A. Yes, sir.

''Q. And was it left in your charge? A. Yes, sir.''

He further testified that he signed the contract—

"Q. How did you happen to sign the contract? A. Because we were—we had decided to incorporate a company by that name, to do that work.

"Q. Who had? A. Mr. Emmke and myself and it was thought best to incorporate a company under some other name than the Elm Tree Inn, as it was a separate proposition, and I suggested that I would draw up papers and show him, which I did, in the meantime, that is, prepared and sent him as a preliminary step. Then the organization has never been completed."

La Rue testified that he mailed the corporation papers to Emmke but Emmke stated that he did not receive them. Nothing further was done toward the matter of incorporating the "Elms Lake Resort Association."

Plaintiff testified that he understood that he was contracting with Mr. Emmke at the time of the execution of the contract; that some work was done upon the dam before he started the work. He testified that the latter part of October, 1918, a very heavy rain came and washed away a portion of the dam; that he called upon Mr. Emmke at the Elms Hotel and told him what had happened and that Emmke was provoked and said, "We'll think it over." About two weeks afterwards he again called on Emmke who told him to go ahead. Plaintiff then worked until about the 24th day of December when it started to freeze and LaRue and Emmke then decided to discontinue the work. In February, 1919, plaintiff again called on Emmke and the latter wanted plaintiff to finish the work "by contract." Plaintiff told Emmke that he desired to go ahead on his contract and demanded that settlement of his ten per cent compensation be made at that time on the work already done. During the progress of the work plaintiff said to Emmke "I got a contract," Emmke replied, "Yes, I know you have and I know just what is in it." Plaintiff did not demand the ten per cent before because a bill is never presented where work is done on a percentage basis until the work is completed. His intention was to wait until the work was completed before demanding the ten per cent.

"It is always permissible where simple contracts are involved to show by parol evidence who is the real principal." [Huff v. Doerr, 206 Mo. App. 563, 566.] We think there is no question but that the evidence shows that this contract was made by LaRue representing Emmke in his capacity as president and manager of the Inn Company. LaRue had no interest in the property, he was merely representing Emmke, he was Emmke's man and was carrying out Emmke's instructions in constructing the dam and providing for the work to be done thereon. While the contract purports to have been executed by the "Elm Lake Resort Association by Geo. A. LaRue, Sect., Treas.," there is nothing in the evidence showing that Emmke authorized or intended that LaRue should enter into a contract signed in any such manner.

On a demurrer to the evidence we take the evidence in its most favorable light to plaintiff. The inference from LaRue's testimony in regard to his and Emmke's intentions in reference to incorporating a company to take over this improvement was merely that Emmke and LaRue had decided to incorporate a company under another name than the Elm Tree Inn Company. LaRue did not testify that it was thought best that "we" incorporate a company but that the company should be incorporated. That LaRue was to assist in the incorporation was plain because he suggested that he would draw up the papers and prepare the preliminary steps but as to who would be the incorporators there is no evidence. The evidence does not show that either LaRue or Emmke were to be the incorporators, the inference being that the incorporators were to be some persons acting on behalf of the Elm Tree Inn Company which was the owner of the land and was making the improvement. It is apparent that whatever LaRue did was done for the Elm Tree Inn Company or, to be more exact, for Emmke who was acting for it. The incorporation papers are not in evidence. Emmke may or may not have been one of the incorporators. There is no evidence that LaRue was to be the secretary and treasurer of the pro-

posed new company or by what authority he used that title in signing the contract. No steps were taken to consummate the incorporation of the new company except to draw up the papers and the submission of them to Emmke. LaRue had no authority to take any further steps and none were taken.

The evidence is quite conclusive that LaRue was directed by Emmke, the president and manager of the Inn Company, to construct this dam. The entire matter was left to LaRue. Emmke did not want to be bothered with it as he was going away on his vacation. LaRue understood for whom he was making this contract, he was making it under the authority and direction of Emmke when the latter left and he was making it for Emmke who was the agent of the Inn Company. There is no evidence as to what individuals were to be the incorporators of the "Elms Lake Resort Associatoin" and such association was not in existence when that name was signed to the contract by LaRue and when he signed that name to it, it cannot be said that he was doing other than executing a contract on behalf of the Inn Company. As we view it, there is no question as to the identity of the principal involved as far as LaRue was concerned. Even plaintiff knew that there was no "Elms Lake Resort Association." He testified that he understood that he was contracting with Emmke. Under the facts in this case the "Elms Lake Resort Association" was the same as the Elm Tree Inn Company. It makes no difference that plaintiff did think that he was making the contract with Emmke. When the true facts were disclosed and it was shown that Emmke was merely the agent of the Inn Company, that the latter was the undisclosed principal, plaintiff had the right to hold it. [Higgins v. Dellinger, 22 Mo. 397; Weber v. Collins, 139 Mo. 501.]

We think there is no merit in the contention of the Inn Company for another reason. In its counterclaim it pleads that it had a contract with plaintiff for the superintendency of the construction of the dam. There

is no contract mentioned in the record, either in the pleadings or in the evidence except the contract sued upon. If there was no contract with the Inn Company in the beginning, the Inn Company, to say the least, adopted the contract when it filed its counterclaim alleging a cause of action against plaintiff based on the contract. [Cross v. A. T. & S. F. R. R. Co., 141 Mo. 132.] The Inn Company in its instruction No. 4 had the court instruct the jury that it was entitled to recover on its counterclaim if it found the facts in effect to be as pleaded in the counterclaim. Defendant by suing on the contract adopted the whole and could not reject portions of it. [Shinn v. Mule Company, 109 Mo. App. 557.]

The Inn Company contends that there is no pleading in the second count of plaintiff's petition nor is there any evidence of any adoption of the contract on defendant's part, but under its instruction No. 3 the issue of adoption is submitted to the jury as follows:—

"The court instructs the jury that your verdict must be for the defendant, Elm Tree Inn Company, in this action, if you find from the evidence in the case, that at the time of the execution of the contract set forth in plaintiff's petition the said George W. LaRue described as Secretary-Treasurer therein, did not intend to make the same on behalf of and for the Elm Tree Inn Company, unless you further find the latter thereafter adopted the said contract in full as its own."

In view of this instruction the Inn Company is estopped to deny that there was such an issue in the case. [Hayes v. Bunch, 91 Mo. App. 467; Cady v. Coates, 101 Mo. App. 147; Thummel v. Surplus, 262 Mo. 651; Hyde v. Honiter, 175 Mo. App. 583.] Therefore, even if there was no contract made on behalf of the Inn Company, the issue as to whether or not it adopted the contract by its conduct was submitted to the jury and the jury having found, under the instruction, for plaintiff, defendant's contention is not well taken.

However, defendant contends that it was required to give this instruction on account of the fact that its

demurrer to the evidence was overruled and having raised the point in its demurrer it is not estopped by the theory submitted under its other instructions, which theory was forced upon it by the action of the court in overruling its demurrer.    Whatever merit there otherwise might have been in this contention the record shows that this defendant offered but one demurrer, which was general in its nature and was not leveled at the three counts separately.

There is no question but that the plaintiff was entitled to recover on his third count and the court was under the obligation to overrule the demurrer submitted, and defendant is not now in a position to say that it was forced to submit this issue for it did not demur separately to each count.    [Stevens v. Saunders, 239 S. W. 600; Roberts v. Walker, 82 Mo. 200, 206; McCarty v. O'-Bryan, 137 Mo. 584, 590; Mo. Pac. Ry. Co. v. McLiney, 32 Mo. App. 166, 175; 31 Cyc. 328.]

The judgment is affirmed.    All concur.